UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JESS DESHAZO,                        )
                                     )  No. CV-05-0404-CI
            Plaintiff,               )
                                     )
v.                                   )  ORDER DENYING PLAINTIFF'S
                                     )  MOTION FOR SUMMARY
JO ANNE B. BARNHART,                 )  JUDGMENT
Commissioner of Social               )
Security,                            )
                                     )
            Defendant.               )
                                     )

        BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 11, 13), noted for hearing without oral argument on June 26,
2006.  Attorney Lora Lee Stover represents Plaintiff; Assistant
United States Attorney Pamela J. DeRusha and Special Assistant
United States Attorney Nancy A. Mishalanie represent Defendant. The
parties have consented to proceed before a magistrate judge.  (Ct.
Rec. 5.)  After reviewing the administrative record and the briefs
filed by the parties, the court **DENIES** Plaintiff's Motion for
Summary Judgment (Ct. Rec. 11) and **GRANTS** Defendant's Motion for
Summary Judgment (Ct. Rec. 13).

                            **JURISDICTION**

        On November 5, 2001, Jess Deshazo (Plaintiff) protectively
filed  applications  for  disability  insurance  benefits  and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

supplemental security income benefits, alleging an onset date of November 15, 2001. (Tr. 71-73.) The claim was denied initially and on reconsideration; a request for hearing was ultimately filed. Administrative Law Judge (ALJ) Richard Hines denied benefits on December 17, 2004; the Appeals Council denied Plaintiff's request for review.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9ᵗʰ Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits.  42 U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any medically determinable physical or mental impairment"

which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**STATEMENT OF THE CASE**

The facts have been presented in the administrative transcript, and the ALJ's decision, and will be summarized briefly here. At the time of the hearing, Plaintiff was 27 years old, with a high-school education and about two years at community college. (Tr. 534, 544.) His past work experience included jobs as a janitor, food server, cashier, roofer, sales representative, projectionist, clothing inspector and child care worker.[1] (Tr. 83, 547, 548.)

In 1997, Plaintiff began taking male hormones after several years of gender identification therapy. He continued the hormone

---

[1] Plaintiff is a transgender female who prefers to be identified as a male. (Tr. 243, 548.) As such, the court refers to Plaintiff herein in the male gender.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

therapy for about one and one half years, but did not proceed to sexual configuration.  He testified he had always had difficulty with gender issues and felt he was discriminated in the work place due to his presentation as a male.  (Tr. 533.)  He testified he could not work because of depression, anxiety and an inability to work with the public.  (Tr. 523.)  In addition to mental health issues, Plaintiff complained of a variety of physical ailments, although none had required surgery or hospitalization since 2000. (Tr. 522.)  Plaintiff has a history of intermittent substance abuse and reported heavy methamphetamine use between 1997 and 2003, as well as cocaine and marijuana use.  (Tr. 356.)  At the time of the hearing, he testified he had not used illegal drugs for over one year.  (Tr. 531.)  He attended at least two chemical dependency outpatient programs.  (Tr. 356.) Plaintiff's last job was as a film projectionist in 2000.  He quit due to family problems and conflict with his supervisor.  (Tr. 356, 521.)  Based on the ALJ's hypothetical question, vocational expert Thomas Moreland testified that Plaintiff was capable of performing his past work as a cleaner and a projectionist.  (Tr. 549.)

**ADMINISTRATIVE DECISION**

The ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. 30.)  At step two and three, ALJ Hines concluded Plaintiff had severe mental impairments which limited his ability to work but, alone or in combination, did not meet or equal the listings.  (Tr. 27.)  He also found Plaintiff had non-severe impairments of intermittent asthma and treatable bilateral *pes planus*.  Medical records mentioned hepatitis C and carpal tunnel syndrome, but the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

ALJ found there was no evidence that these conditions limited Plaintiff's ability to work. (Id.)   The ALJ found Plaintiff's complaints of functional limitations were not fully credible. (Tr. 28.)

Regarding Plaintiff's residual functional capacity (RFC), the ALJ determined Plaintiff was capable of performing a full range of exertion in work with limited to superficial contact with the public and superficial interaction with co-workers. (Tr. 30.)  Based in part on testimony by vocational expert Moreland, the ALJ determined Plaintiff was capable of performing his past relevant work as a projectionist and industrial cleaner (light and medium work). (Tr. 549-50.)  Plaintiff was found not disabled. (Id.)

**ISSUES**

The question presented is whether there is substantial evidence to support the ALJ's decision to deny benefits and, if so, whether the decision was based on proper legal standards.  Plaintiff asserts the ALJ erred when he (1) found Plaintiff had no severe physical impairments; (2) found Plaintiff not credible; and (3) improperly assessed Plaintiff's RFC.

**ANALYSIS**

At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment that can be shown to be the cause of the symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b).  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

*Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

Social Security Regulations (Regulations) provide that an impairment is "severe" if it significantly limits one's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

In finding Plaintiff did not have a severe physical impairment, the ALJ relied on the treatment records of James Pittman, Ph.D., ARNP, who treated Plaintiff from 1999-2005,[2] as well as medical records from examining physician Robert Rose, M.D., and agency reviewing physicians. (Tr. 23-24, 26.) He also based his step two

---

[2] Plaintiff submitted medical records after the ALJ hearing that were reviewed by the Appeals Council. (Tr. 5, 7.) Those records are part of the record on review by the court. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

findings on Plaintiff's own statements and testimony and determined that Plaintiff's assertions of disability were inconsistent with other evidence in the record and, thus, not credible. (Tr. 27-28.) Plaintiff objects that the credibility findings and the severity findings are not supported by substantial evidence, and the ALJ's failure to include all of his limitations in the RFC was legal error. (Ct. Rec. 12 at 15.)

A.    Credibility

At step two, Plaintiff must prove the existence of a physical impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. In *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002), the court noted when an ALJ finds the claimant's testimony as to the severity of impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *See also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Reddick v. Chater,* 157 F.3d 715, 722 (9th

Cir. 1998).   If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan,* 169 F.3d at 600.

Here, the ALJ gave clear and convincing reasons for discounting Plaintiff's testimony.  He found that Plaintiff sought treatment for his transgender issues on a situational basis, but failed to follow through with treatment or medication recommendations.   He also reasoned that Plaintiff was able to work as a projectionist "without apparent difficulty," take care of his finances and assist his disabled roommate.  The ALJ noted intermittent and ongoing substance abuse involving illegal street drugs, inconsistencies between his statements and the medical reports, evidence of secondary gain and indications of exaggeration in objective testing as a basis for finding Plaintiff not fully credible. (Tr. 28.)  These findings are supported by the record.

In December 2000, Minerva Arrienda, M.D., noted Plaintiff's failure to comply with medication and treatment recommendations. (Tr. 157.)   Plaintiff also failed to follow through with his transgender issues or chemical dependency treatment and after-care, and still was having challenges with substance abuse in mid-2003, although he denied drug use at the 2004 hearing.  (Tr. 299, 305, 531.)  Dr. Pittman continued to recommend chemical dependency treatment in his September 2005 (post-hearing) notes, indicating Plaintiff had not complied with prior recommendations.  (Tr. 496.) Examining physician Robert Rose, M.D., noted no difference in Plaintiff's leg lengths, contradicting Plaintiff's allegations of back problems and limitations due to unequal leg lengths. (Tr. 204, 527.) In Plaintiff's first interview with examining psychologist

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

James Bailey, Ph.D., Plaintiff reported he quit community college because of drug use, but at his second interview he stated he left due to health problems and gender discrimination. Dr. Bailey noted this inconsistency and evidence of secondary gain in his 2004 report. (Tr. 356-57; *see also* Tr. 534.) Significantly, Plaintiff did not report quitting his projectionist job for any disability-related reason. (Tr. 357.) However, at the hearing, he testified the reason he could not work was due to depression, anxiety, anger and his dislike of being around the public. (Tr. 523.) The ALJ's credibility findings are further supported by objective testing results in 2000 and 2005 indicating exaggerated responses, "faking bad," and invalid test results. (Tr. 155, 447.) Contrary to his testimony that he did not vacuum or sweep, had no family contract, did not socialize and could walk only a block (Tr. 524-26), the record indicates Plaintiff was living independently, cooking, shopping, driving, doing household chores, yard work and odd jobs. (Tr. 95-97, 100, 107, 357.) His testimony further is contradicted by post-hearing medical notes indicating that he was doing well and planning to go to work. (Tr. 448, 453, 490.) The ALJ's credibility findings are supported by substantial evidence.

B.   <u>Medical Evidence</u>

Plaintiff argues the ALJ erred when he ignored the opinions of reviewing and consulting physicians as well as the opinions of James Pittman, Ph.D., ARNP,[3] at step two and in assessing Plaintiff's RFC.

---

[3] Although Dr. Pittman is a licensed psychologist, his opinions are rendered in his capacity as a nurse practitioner. (Tr. 496.) The Regulations recognize nurse practitioner opinions as those of an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

(Ct. Rec. 12 at 15.)

In a disability proceeding, a treating psychologist or physician's opinion is given special weight because of his or her familiarity with the claimant and his physical condition. See *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Opinions of treating or examining doctors, if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.*, *citing Andrews,* 53 F.3d at 1043. To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas,* 278 F.3d at 957, *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is not required to accept the opinion of a treating or examining doctor if that opinion is brief, conclusory and inadequately supported by

"other source" and not an "acceptable medical source." 20 C.F.R. §§ 404.1513(d), 416.913(d). "Other source" testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, the ALJ is required to "consider observations by other sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Although "other source" opinions are not given as much weight as those of "acceptable medical sources," an ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

clinical findings. *Thomas*, 278 F.3d at 957*, citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. See *Flaten v. Sec. of Health and Human Services*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Plaintiff contends the ALJ should have found Plaintiff's feet abnormalities, back pain, carpal tunnel syndrome and reactive airway disease/asthma were physical severe impairments. Under the Regulations, an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Here, after giving a thorough summary of the medical evidence, the ALJ found no severe physical impairments, stating there was no evidence of ongoing treatment, nerve conduction study or corrective surgery discussion, no diagnostic work up for the carpal tunnel or hepatitis. (Tr. 27.) He also found Plaintiff did not follow through with recommended testing or medications for his ailments and the *pes planus* could be treated with orthotics. (Id.) Further, none of Plaintiff's providers opined Plaintiff's physical ailments precluded work.

Plaintiff reported to examining physician, Dr. Rose, that he could stand up to four hours, walk two miles, and sit with no problems. (Tr. 203.) In July 2002,Dr. Rose diagnosed *pes planus*

and opined Plaintiff's foot problems probably could be managed orthotically. (Tr. 205.) He also diagnosed carpal tunnel syndrome based on examination, without nerve conduction studies, but did not indicate the condition caused any limitations. (Tr. 204.) In November 2002, Dr. Pittman opined Plaintiff could sit for two-thirds of the day, stand for one-third, move for two-thirds of the day, and had no problems with handling, hearing, speaking seeing or travel.[4] (Tr. 242.) In 2003, agency physician Morris Fuller, M.D., upon reviewing Dr. Rose's report, opined Plaintiff could do medium work and should avoid concentrated fumes due to asthma. He noted Plaintiff's complaints were partially credible. (Tr. 255, 257.)

In his argument, Plaintiff does not point to any objective evidence to support his claim that his *pes planus,* asthma or carpal tunnel condition, or his physical conditions combined, prevented him from working. *See* 20 C.F.R. § 404.1513, 416.913 (evidence from medically acceptable clinical and laboratory techniques is required to establish impairment; claimant's statements about his symptoms are not sufficient proof). Although he argues that his job as a projectionist requires fingering that is impaired by his carpal tunnel condition, the record indicates he left this job for non-physical reasons. (Tr. 356.) Also, no medical source indicated limitations in manipulation. (*See* Tr. 254.) Plaintiff did not meet his burden at step two. The ALJ properly found that there was no

_____

[4] In 2005, after the hearing, Dr. Pittman opined Plaintiff's mental and physical problems caused mild to moderate impairment in Plaintiff's ability to perform work-related activities. He recommended sedentary level work, but noted no limitation on agility, mobility or flexibility. (Tr. 495-96.)

evidence that Plaintiff's physical ailments limited his ability to perform work activities.  (Tr. 27.)

Plaintiff's later argument that the ALJ improperly assessed his RFC is without merit.  The RFC is the most a claimant can do considering his limitations.  It is solely the ALJ's responsibility to determine the RFC, taking into consideration the entire record. 20 C.F.R. §§ 404.1546, 4156.946, *SSR* 96-5p.  Further, the ALJ is not required to accept as true limitations presented by Plaintiff's counsel. *Magallanes,* 881 F.2d at 756 *(citing Martinez v. Heckler,* 807 F.2d 771, 773 (9th Cir. 1986)).  He may accept or reject restrictions, as long as they are supported by substantial evidence. *Magallanes,* 881 F.2d at 756-57.

The individual presented in the ALJ's hypothetical to the vocational expert at step four was one of Plaintiff's age, education and work experience with no exertional limitations, only superficial contact with the public and superficial interaction with co-employees.  (Tr. 549.)  As discussed above, the ALJ did not err in finding no severe physical limitations. The ALJ properly found Plaintiff's self-reporting was not fully credible, and many of the psychological evaluation forms were based primarily on Plaintiff's statements.  Further, the non-exertional limitations propounded by Plaintiff's counsel were taken in part from a RFC form completed by a non-examining psychologist and forms attached to Dr. Bailey's report.  (Tr. 287-89, 360-63, 550-52.)  These checklist forms are not sufficient basis for RFC findings. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (*citing Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983)).  A review of the entire report shows that Dr. Bailey observed inconsistencies and evasiveness in Plaintiff's

reporting, as well as evidence of secondary gain. (Tr. 356-57.) Also, objective psychological testing results were found invalid due to Plaintiff's over-reporting and exaggeration. (Tr. 155, 447-48.) As discussed above, the ALJ noted this evidence in his credibility analysis; thus he did not err in discounting Dr. Bailey's checklist summary.

Medical expert Thomas McKnight[5] and treating psychiatrist Dennis Twigg, M.D., opined Plaintiff had only mild to moderate limitations. (Tr. 375, 393, 413, 511-12, 514-15.) Contrary to Plaintiff's assertion that the effects of medication were not considered, Dr. McKnight testified that larger doses might have affected Plaintiff's attention, and observed that treating psychiatrist Dr. Twigg noted no serious problems with either fatigue or side effects. Dr. McKnight also opined that if Plaintiff were on street drugs at any time during his mental health treatment, there would be no way to measure the severity of his symptoms. (Tr. 516.)

---

[5] Courts have upheld an ALJ's decision to reject the opinion of an examining physician based in part on the testimony of a non-examining medical advisor. *Lester*, 81 F.3d at 831. The analysis and opinion of an expert selected by an ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's resolution of conflicting medical testimony. *Andrews,* 53 F.3d at 1041, *citing Magallanes,* 881 F.2d at 753. Further, testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.* If supported by substantial evidence, the ALJ's decision must be upheld, even where the evidence is susceptible to more than one rational interpretation. *Andrews,* 53 F.3d at 1039-40.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

Drug use was reported intermittently throughout Plaintiff's medical record. (Tr. 131, 233, 244, 299, 301, 333, 356, 446.) At the March 2004 hearing, Plaintiff testified he had not used illegal drugs for about a year. (Tr. 531.) In September 2005, Plaintiff reported to Dr. Pittman that he had not used methamphetamine for six months or marijuana for three months. (Tr. 502.)

When there are ambiguities and/or conflicts in the medical record, they must be resolved by the ALJ, and the reviewing court may not substitute its judgment for that of the ALJ. *Thomas,* 278 F.3d at 956-57. Here, the ALJ properly relied on the treating psychiatrist's notes and Dr. McKnight's testimony which is supported by other medical evidence in the record. In light of the entire record and the ALJ's credibility findings, the hypothetical presented to the vocational expert is supported by substantial evidence. Thus, Mr. Moreland's opinion that Plaintiff could still perform light to medium work as a projectionist and a cleaner is competent evidence on which to base a finding of non-disability.

## CONCLUSION

For the reasons outlined above, the Commissioner's decision to deny Plaintiff's claim for disability benefits was supported by substantial evidence in the record and was based upon the proper legal standards. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 11)** is **DENIED.**

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED**.

3. The District Court Executive is directed to file this

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

1  Order and provide a copy to counsel for Plaintiff and Defendant.

2       4.   Judgment shall be entered for Defendant and the file

3  **CLOSED.**

4       DATED July 31, 2006.

5

6                    S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 16